UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:25-cv-22367

JANE DOE

      Plaintiff

v.

NCL (BAHAMAS) LTD d/b/a
NORWEGIAN CRUISE LINE

      Defendant

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff JANE DOE hereby sues NCL (BAHAMAS) LTD d/b/a NORWEGIAN CRUISE LINE a Foreign Profit Corporation and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorneys' fees.

2.    **THE PLAINTIFF.** The Plaintiff JANE DOE is *sui juris* and is a resident and citizen for purposes of diversity of jurisdiction of the state of Texas. "DOE" is an alias used because of the nature of the events in this matter. NCL is aware of the identity of DOE as provided in the notice of claim sent to NCL.

3.    **THE DEFENDANT.** NCL (BAHAMAS) LTD d/b/a NORWEGIAN CRUISE LINE (hereinafter referred to as "NCL") is a limited liability company which is incorporated in the country of Bermuda and which is and at all times material hereto was headquartered and does business in Miami-Dade County, Florida. For purposes of diversity of citizenship, NCL is a citizen

1

of the country of Bermuda. At all times material hereto, NCL owned and/or operated the cruise ship on which the subject negligence occurred.

4.   **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

5.   **VENUE AND PERSONAL JURISDICTION.** NCL at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.   **PERSONAL JURISDICTION.** NCL consented to and/or waived personal jurisdiction in the ticket contract between the parties. The ticket contract requires that the Plaintiff file suit for personal injury in the Southern District of Florida. The Ticket Contract defines the term "Carrier" to mean NCL (Bahamas) Ltd and includes "the vessel upon which the voyage was booked or any vessel substituted in its place (the "Cruise Ship"). Therefore, NCL is included as "Carrier" which has consented to jurisdiction.

2

7.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

8.      **DATE OF THE INCIDENT.** The incident occurred on May 7, 2024.

9.      **LOCATION OF THE INCIDENT.** The subject incident occurred on the vessel *NCL Viva*, a ship in navigable waters, and specifically in the solo cabin of the cruise ship which was assigned to DOE. Accordingly, the Plaintiff's claims are governed by The General Maritime Law.

10.     **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

11.     **REPRESENTATIONS OF NCL ABOUT THE SAFETY AND SECURITY ON ITS SHIPS.** NCL advertises on its website that there's "More to see. More to Do. More to Enjoy. There is More to a vacation."[1] and it has "zero tolerance for crime onboard its vessels."[2]  The cruise line markets family cruises to families with minor children and teenagers. Further, NCL promotes solo cruising providing several stateroom options and states "[t]he best experiences last a lifetime – solo travel is one of them. The ability to explore, take chances to meet new people and do what you want when you want.[3]  *NCL Viva* advertises and offers offshore excursions for guests to indulge in the full cruise ship experience and explore destinations. NCL, in its literature and advertisements represents directly and  indirectly that it provides a safe, secure and fun experience onboard its ships. In order to accomplish this marketing, the cruise line advertises and represents

---

[1] *See* https://www.ncl.com/why-cruise-norwegian
[2] *See*  https://www.ncl.com/sites/default/flies/Security_Guide_040517_2
[3] *See* https://www.ncl.com/cruise-deals/solo-cruising

that its ships are safe and secure for passengers. These representations on its website are false or at best misleading. In an effort to save its public image and preserve profits rather than ensure the safety and security of its passengers, NCL under-reports crimes that occur onboard to U.S. authorities, the press, and the public. The under-reporting and false representations cause the American public, including the Plaintiff herein, to choose NCL's cruise ships and, when onboard, to let down their guard as to the dangerous tendencies of crew members. Passengers, including the Plaintiff herein, rely on these false representations when the passengers make the choice of this cruise line to cruise with.

12.     NCL typically hires young men from developing world countries and pay these young men a minimal wage below the wage which would be required if they hired Americans for the same job. They place these young men on the ship for months at a time and require them to work 7 days a week for 12 to 14 hours a day, all in the name of saving some money. These young men are away from their families and spouses and significant others for the months in which they are living onboard the ships. Despite these circumstances, NCL does little or nothing to screen these young men before they are hired, to train the young men when they are hired, or to monitor the activities of these crew members after they are hired. Additionally, NCL, poorly screens (or choose not to screen), established proper criteria for hiring, train poorly and monitor the activities of its crew members poorly and unreasonably. The crewmembers include the cabin attendants who the cruise line know would have access to passenger cabins and therefore would be around passengers such as unaccompanied women. NCL failed and continues to fail to monitor and control its crew members onboard its ships in a reasonable manner. NCL failed to provide a reasonably safe environment for their passengers on the *NCL Viva,* such as DOE*,* and failed to protect passengers from physical and physical sexual assault and battery by its crew member. NCL is negligent for failing to provide a reasonably safe ship for its

passengers, for failing to reasonably warn its passengers of these dangers, for failing to reasonably screen, monitor, and train its crewmembers, and for its negligent security measures.

13.     **DESCRIPTION OF THE INCIDENT.** An NCL cabin steward or other employee upon information and belief identified by the name "Rudy" onboard the subject cruise ship pushed his way into the cabin of DOE and physically and sexually assaulted and battered DOE.

14.     The NCL employee on this day assisted DOE by carrying some of the bags of souvenirs which DOE brought back to the ship from a wine tasting excursion in Italy. Thus, the NCL employee got close enough to DOE to observe that DOE had been drinking alcohol and was impaired.

15.     The NCL employee shortly after assisting DOE back to her cabin returned and knocked on the door. When DOE answered the door, the NCL employee raised his arm and pushed DOE with his arm and hand back into the cabin. He then closed the door behind him. He started putting his hands around DOE's hips and began kissing her. DOE said "No" and pushed him away. The crew member/cabin attendant then pushed DOE onto the bed. The NCL employee then laid his whole body on top of DOE. He pulled up her shirt and began to kiss her left breast underneath her bra. DOE again exclaimed "No!" but the crewmember proceeded to pull her pants down below her belly button. In a panic, DOE aggressively pushed him off, got  off the bed and walked toward a wall. The NCL employee then pined DOE against the wall and tried to kiss her again. DOE exclaimed:   "No! this is not what I want!" and pushed him off again. The NCL employee ran out of the cabin.

16.     All of the actions and conduct of the assaulting NCL employee were without the consent of DOE.

17.  **NCL'S REVICTIMIZATION OF THE CRUISE PASSENGER**.  The following day, May 8, 2024, NCL's negligent and callous indifference toward DOE's fragile emotional state of mind following the sexual assault and sexual battery continued. The morning of May 8, 2024, a security officer approached DOE and asked DOE to go to the security room to answer questions. DOE was forced to relive the trauma of the physical and sexual assault and sexual battery. DOE was overwhelmed by feelings of shock, embarrassment and intimidation, and was made to feel isolated when the NCL security officer dismissed DOE and informed DOE that her account conflicted with the version provided by the perpetrating employee. NCL refused to relocate DOE to another cabin despite requests by DOE to be relocated.

18.  After reporting the incident, DOE had no choice but to return to her cabin. DOE felt scared and unsafe to leave her room for some time after the incident. She requested updates on the incident report multiple times and the security officer told her that it was an ongoing investigation and that he could not give her any details. The security officer would not tell DOE if the crew member was removed from the ship after the incident. Instead, DOE was told that there was nothing they could do and the case was resolved and closed on their end. NCL shipboard personnel advised DOE her that she would need to report the incident to the Italian authorities which she was unable to do because the ship had already left Italy.

19.  The actions of the NCL employee were intentional, malicious, deliberate, calculated, and premeditated. NCL then made matters worse and revictimized its passenger DOE by apparently sided with its assaulting employee, by refusing to advise DOE of the actions which NCL had taken against the crewmember if any, by refusing to move Doe to another cabin, by refusing to facilitate DOE reporting the incident to the proper authorities, by otherwise failing and refusing to protect DOE for the remainder of the cruise, and by failing and refusing to assure DOE

that DOE would be protected from any further assault by its assaulting employee.  Because of the physical and sexual assault and battery of the NCL employee and because of the actions and conduct of NCL immediately after the physical and sexual assault and battery by its employee, DOE has suffered and will continue to suffer severe emotional distress.

20.    **NOTICE: PRIOR INCIDENTS.** NCL has notice that physical and sexual assault and battery, and rape onboard their ships are a serious problem. Pursuant to the Cruise Vessel Security Act (CVSSA) of 2010, the United States requires cruise lines:

> to keep records of all complaints about certain crimes — including sexual assault and rape — that occur aboard any of their ships during a cruise "that embarks or disembarks passengers in the United States." 46 U.S.C. § 3507(g)(1)(A); see id. § 3507(k)(1). Cruise lines must report those complaints to the FBI and the Department of Transportation. Id. § 3507(g)(3)(A)(i), (ii). The DOT has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about certain crimes — including sexual assault and rape — that occur onboard cruise vessels. See id. § 3507(g)(4). Those compilations are called Cruise Line Incident Reports. Cruise Line Incident Reports, U.S. Dep't Transp., https://www.transportation.gov/mission/safety/cruise-line-incident-reports (last updated Apr. 17, 2019).

*K.T.,* 931 F.3d 1047-49. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to NCL's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident").

21.    NCL had notice of the danger of sexual molestations and physical and sexual assaults and battery onboard because of prior similar incidents. *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the Defendant's notice," "conditions substantially similar to the occurrence in

question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the NCL's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

    a.    *John Doe, as Father and Natural Guardian and Jane Doe, as Mother and Natural Guardian, JANIE DOE, a Minor Child v. NCL (Bahamas) Ltd., a Bermuda Company d/b/a NCL and/or NCL America, Case No. 1:12-cv-24384.*

    b.    *Jane Doe v. NCL (Bahamas) Ltd., a Bermuda Company d/b/a NCL and/or NCL America, Case No. 1:16-cv-23733-UU.*

    c.    *Jane Doe v. NCL (Bahamas) Ltd., a Bermuda Company d/b/a Norwegian Cruise Line, Case No. 1:21-cv-20502.*

    d.    *Jane Doe v. NCL (Bahamas) Ltd., a Bermuda Company d/b/a Norwegian Cruise Line, Case No. 1:21-cv-20334-JEM.*

    e.    *Jane Doe and John Doe, Individually and as Parents and Natural Guardians of H.P., a Minor Child v. NCL (Bahamas), a Bermuda Company d/b/a Norwegian Cruise Line, Case No. 1:18-cv-20060-RNS.*

    f.    *Jane Doe (A.S.) v. NCL (Bahamas) Ltd., Case No. 1:17-cv-24399-CMA.*

22.    **<u>NOTICE: ON-GOING, REPETITIVE PROBLEM.</u>** NCL had notice that sexual molestation and physical and sexual assault and battery onboard its ships are an on-going repetitive problem. NCL documents and, as a matter of law, must report prior incidents involving rape, physical and sexual assault and battery, and other crimes, which may include prior shipboard safety

meetings; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; prior investigative reports as well as through other documentation.

23. **NOTICE: RESTRICTED ACCESS TO CREWMEMBERS**. Further evidence that NCL had notice of problems with crewmembers is the fact that the electronic sub-master keys provided to room stewards do not allow any one steward to access rooms to which the room steward is not assigned. These measures, however, are inadequate. The crewmembers are still allowed physical access to common areas including cabin hallways where the crewmembers do not have job responsibilities.

24. **DUTIES OWED BY NCL TO ITS PASSENGERS IN REGARD TO PHYSICAL AND SEXUAL ASSAULT AND BATTERY.** The General Maritime law, state and federal, imposes a strict liability on the common carrier, including the NCL herein, for physical and sexual assault and battery and rape. This is a "special non-delegable duty owed by the carrier to the passenger." *Doe v. Celebrity Cruises, Inc*., 394 F. 3d 891, 907 (11th Cir. 2004); *New Orleans and N.E.R. Co. v. Jopes,* 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility" for its employee's misconduct. *Tullis v. Fidelity and Casualty Company of New York*, 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the Eleventh Circuit Court of Appeals in *Doe v. Celebrity Cruises Inc*., 394 F. 3d at 909. "It is a widely adopted rule that common carriers owe such an absolute duty to their passengers." See *Doe v. Celebrity Cruises Inc*. 394 F. 3d at 911.

25. **DUTIES OWED BY NCL TO ITS PASSENGERS IN GENERAL.** NCL owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie*

*Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).  The NCL's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit."  See, e.g., *Chaparro v. Carnival Corporation*, 693 F. 3d 1333 (11th Cir. 2012) and *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).

26.     Despite these duties, notice and circumstances of hiring crew described herein, NCL failed and continue failing to monitor and manage their crew members onboard the ship in a reasonable manner. NCL failed to perform an initial and subsequent review of crew members' mental health, investigate crew members, train, test, counsel including proper testing, and/or continued training. In sum, NCL failed to provide a reasonably safe environment for their passengers on the *NCL Viva* and to protect passengers, including the Plaintiff, from physical sexual assault and sexual battery by their crew member.

27.     NCL typically hires young men from developing world countries and pays these young men a minimal wage below the wage which would be required if they hired Americans for the same job. They place these young men on the ship for months at a time and require them to work 7 days a week for 12 to 14 hours a day, all in the name of saving some money. These young men are away from their families and spouses and significant others for the months in which they are assigned to and living onboard the ships.

28.     Despite these circumstances, NCL did little or nothing to screen these young men before they are hired, to train the young men when they are hired, or to monitor the activities of these crew members after they are hired. Second, NCL poorly screened (or chose not to screen), established the criteria for hiring, poorly and unreasonably trained, and poorly and unreasonably monitored this and other crew members who would have access to female passengers.

29.     Further, NCL did not implement a security protocols that would not allow its employees access to unassigned cabins areas. Preventing its employees from accessing unassigned cabin areas would have prevented the crewmember from access to the floor he was not assigned to work. A proper security method would have alerted NCL that a crewmember was in a none-assigned floor, carrying the Plaintiff's souvenir bags into the Plaintiff's cabin, returning to the Plaintiff's cabin, entering and locking the door to the Plaintiff's cabin. Had NCL implemented a reasonable security protocols, NCL's would have noticed the crewmember and would have told its crewmember that his actions where prohibited and demanded its crewmember to leave the floor and the Plaintiff's cabin and Plaintiff would have never been sexually assaulted.

**COUNT I**
**STRICT LIABILITY FOR PHYSICAL AND SEXUAL ASSAULT AND BATTERY**
**(Respondent Superior under General Maritime Law)**

30.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 29 above.

31.     This is an action against NCL for strict liability for the sexual and physical assault and battery committed by the acts of NCL's employee/crewmember onboard the cruise ship *NCL Viva.*

32.     NCL employed a crewmember onboard the cruise ship *NCL Viva* who physically and sexually assaulted and battered a cruise passenger, DOE, as more fully described above. Under the General Maritime Law, NCL is strictly liable for the damages and injuries caused by its crewmember for this physical and sexual assault and battery.

33.     **DUTIES OWED BY NCL.** The General Maritime Law, state and federal, imposes a strict liability on the common carrier, including NCL for physical and sexual assault and battery by its employees. Courts sitting in Admiralty have long recognized the duty rooted in strict liability is

nondelegable and unconditional. As such, this duty is absolute, and the common carrier bears the ultimate responsibility for the misconduct or wrongdoing of its crewmembers.

34.    **PROXIMATE CAUSE AND DAMAGES.** As a result of the intentional acts of physical and sexual assault and battery by NCL's employee, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. The damages are permanent. The Plaintiff has suffered and will continue to suffer economic damages including but not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and non-economic damages. Economic damages include medical treatment, psychological treatment, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and non-economic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**GENERAL NEGLIGENCE**

35.    The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 29 above.

36.     This is an action against the NCL for negligence.

37.     **<u>DUTIES OWED BY NCL.</u>**  NCL owes a duty of reasonable care under the circumstances to its passengers. The circumstances are that NCL operates 19 cruise ships with thousands of crewmembers and thousands of passengers.  The crewmembers are for the most part young man who are working onboard the ships 12-14 hours a day for months at a time. The circumstances are also that the passengers are relaxed on vacation and sometimes drinking alcohol in the presence of these crewmembers. Further, the circumstances are that the crew ship is an isolated, enclosed entity where the passengers are onboard for hours or days at the time under the close observation by these crewmembers during that time.  Further, the circumstances are that there is no independent governmental law enforcement onboard the NCL crew ships. The only security provided by NCL are by NCL employees.

38.     NCL knew for years before the subject incident that there had been numerous incidents over the years of crewmembers on cruise ships in general and on NCL ships in particular committing physical and sexual assaults, batteries, and rapes of its passengers and specially female passengers. *See*,  *K.T. v. Royal Caribbean Cruise Line*, 931 F.3d 1041, 1049. Further, the circumstances are that "sexual assaults and other violent crimes on cruise ships are a serious problem." NCL knew of this problem years before this incident and years before 2011 when the reports made by the cruise lines cited were cited in the Eleventh Circuit Court of Appeals opinion in *Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 (11th Cir. 2011)* and cited again in 2019 in *K.T. v. Royal Caribbean Cruises, Ltd.,* 931 F.3d 1041, 1049 (2019).

39.     Further evidence that NCL had notice of problems with crewmembers assaulting aspect is the fact that the electronic sub master keys provided to room stewards do not allow access to rooms to which the room stewards are not assigned.  This measure of course does not go far

enough.  These same crewmembers are allowed physical access to common areas such as passenger cabin hallways where they do not have job responsibilities.

40.     Further evidence that NCL had notice of the serious problem with crew members assaulting passengers is that NCL like other major cruise line have been required to keep records of all complaints about certain crimes, which include physical and sexual assault and battery and/or rape. Cruise lines, including the NCL must report complaints of sexual assault and rape to the FBI and the Department of Transportation. *See* 46 U.S.C. §3507(g)(1)(A); 46 U.S.C. §3507(k)(1); 46 U.S.C. §3507(g)(3)(A)(i),(ii). The Department of Transportation has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about crimes, including sexual assault and rape that occur onboard cruise vessels. 46 U.S.C. §3507(g)(4). These compilations are titled Cruise Line Incident Reports and maintained on the United States Department of Transportation website at  https://www.transportation.gov/mission/safety/cruise-line-incident-reports.   According to the Department of Transportation, sexual assault is the most common crime reported on cruise ships. For example, in 2022, cruise lines reported 67 crimes to the Department of Transportation, 57 of which involved sexual assaults.

41.     The circumstances which form the duties of NCL also include the fact that NCL on its website makes representations to the public about the safety of its ships in order to induce the public to buy cruise tickets. NCL advertises on its website that there's "More to see. More to Do. More to Enjoy. There is More to a vacation."[4] and it has "zero tolerance for crime onboard its vessels."[5] The cruise line markets family cruises to families with minor children and teenagers. Further, NCL promotes solo cruising providing several stateroom options and states "[t]he best experiences last a lifetime – solo travel is one of them. The ability to explore, take chances to meet new people and do

---

[4] *See* https://www.ncl.com/why-cruise-norwegian
[5] *See*  https://www.ncl.com/sites/default/flies/Security_Guide_040517_2

what you want when you want.[6] *NCL Viva* advertises and offers offshore excursions for guests to indulge in the full cruise ship experience and explore destinations. NCL in its literature and advertisements represents directly or indirectly that it provides a safe, secure and fun experience onboard its ships. In order to accomplish this marketing, the cruise line advertises and represents that its ships are safe and secure for passengers.

42.     NCL represents to the public on its website that the public areas are monitored by cameras, and highly trained Ship Security Operators continuously patrol the ship and are on emergency call 24/7.[7] Further, NCL represents to the public that NCL has a strict policy prohibiting dating between crew members and passengers.[8] "It will result in termination/dismissal. We also have a zero tolerance for harassment of any nature. Every crew member is responsible for keeping a safe, harmonious environment onboard."[9]

43.     Therefore, NCL's duty of care includes taking precautions as reasonably necessary to protect its passengers from physical and sexual assault and battery, and rape, which were reasonably foreseeable dangers. NCL's duty of care includes and is not limited to restricting sufficiently access to hallways and other common areas where the job duties of that crewmember does not require such access; monitoring crewmembers' activities especially in passenger cabin areas; investigating physical and sexual assaults and batteries adequately;; providing, maintaining, and implementing reasonable measures to ensure the safety of its passengers; providing adequate including assigning and hiring sufficient number of security personnel roaming the ship and monitoring the close circuit tv monitors; and properly and reasonably training its employees in the proper methods of monitoring the activities of crew members in or around passenger staterooms.

---

[6] *See* https://www.ncl.com/cruise-deals/solo-cruising
[7] *See* https://ncl.com/fr/en/about-us/privacy-policy
[8] *See* https://www.ncl.com/about/careers/shipboard-employment/life-onboard
[9] *Id.*

44.     Specifically, NCL had to duty and should have restricted this crewmembers access even more and should have monitored this crewmember even more because the cruise line knew that crewmembers can commit crime including sexual assault and battery and they knew restricting access is a security measure that NCL had implemented to limit steward access to cabins of passengers to which they are not assigned to.

45.     **<u>NCL BREACHED ITS DUTIES.</u>** NCL breached its duties to exercise reasonable care under the circumstances and was negligent by its failures and by its choices of rules, regulations, policies, and procedures, and by its other actions and conduct including but not limited to the following: Failing to limit or restrict sufficiently access to passenger cabin hallways and other common areas where the job duties of that crewmember does not require such access; failing to monitor crewmembers' activities especially in passenger cabin areas; failing to investigate physical and sexual assaults and batteries adequately and failing to take seriously the accounts by passengers of such assaults and batteries which in turn sends a message to crewmembers that the consequences of such assaults and batteries will be little or nothing and thus these practices onboard fail to act as a deterrence to assaults and batteries and may even encourage such outrageous behavior; failing to fulfill the representations which the cruise line makes in its literature, on-line and otherwise about the safety and security of passengers onboard its ships; failing to make, create and maintain a safe environment passengers as advertised; failing to properly and reasonably train its employees in the proper conduct around passengers; failing to enforce the rules, regulations, policies, and procedures designed to prevent crewmembers from committing assaults and batteries on NCL passengers, failing to monitor, electronically and physically the activities of crew members in or around passenger cabin areas including the hallways outside the cabins.

46. **PROXIMATE CAUSE AND DAMAGES.** As a result of NCL's negligence, the NCL's crewmember employee was allowed access to a hallway and area in which he had no job responsibilities and followed DOE back to her cabin when she was impaired by the alcohol she drank on NCL's wine tasting excursion in Italy, pushed his way into the cabin of DOE, and physically and sexually assaulted and battered DOE, as more fully described herein.

47. The Plaintiff DOE has suffered in the past and will continue to suffer in the future injuries and damages as a result of this physical and sexual assault and battery. These injuries and the damages they cause are permanent. The damages are economic and non-economic. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and non-economic damages. Economic damages include medical treatment, psychological treatment, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and non-economic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENCE FOR FAILURE TO WARN

48.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 29 above.

49.     This is an action for negligence of NCL failing to warn passengers, including Plaintiff of its hazards, risks or dangers in places where passengers are invited or reasonably expected to visit.

50.     **DUTIES OWED BY NCL.** NCL owes a duty of reasonable care under the circumstances to its passengers. The circumstances are that NCL operates 19 cruise ships with thousands of crewmembers and thousands of passengers. The circumstances are that passengers are relaxed on vacation and sometimes drinking alcohol in the presence of these crewmembers. Further, the circumstances are that the crew ship is an isolated, enclosed entity where the passengers are onboard for hours or days at the time under the observation of these crewmembers. Further, the circumstances are that there is no independent governmental law enforcement onboard the NCL crew ships. The only security provided by NCL are provided by NCL employees.

51.     Circumstances include that there are sexual assaults onboard that the passengers are not aware of.  If they had been aware of, the Plaintiff would not have gone on this cruise.

52.     On the other hand, cruise lines, including NCL knew that there had been numerous incidents over the years of crewmembers on cruise ships committing physically and sexually assaulting, battery and rape of its passengers and specially female passengers. *See*, *K.T. vs. Royal Caribbean Cruise Line*, 931 F.3d 1041, 1049. Further, the circumstances are that "sexual assaults and other violent crimes on cruise ships are a serious problem." NCL knew of this problem years before this incident and years before 2011 when the reports made by the cruise lines cited were cited in the Eleventh Circuit Court of Appeals opinion in *Doe v. Princess Cruise Lines, Ltd., 657*

18

*F.3d 1204 (11th Cir. 2011)* and cited again in 2019 in *K.T. v. Royal Caribbean Cruises, Ltd.,* 931 F.3d 1041, 1049 (2019).

53.     Further evidence that NCL had actual notice of the danger of sexual molestations and physical and sexual assaults and battery onboard NCL is because of prior similar incidents onboard NCL's cruise ships referenced in detail above.

54.     Further evidence that NCL had notice of problems with crewmembers assaulting passengers is the fact that the electronic sub- master keys provided to room stewards do not allow access to rooms to which the room stewards are not assigned.  Yet these measures are inadequate because they allow physical access to the hallways and other common areas outside the passenger cabin areas where they do not have responsibilities.

55.     Further evidence that NCL had notice of problems with crew members assaulting passengers is that NCL like other major cruise line have been required to keep records of all complaints about certain crimes, which include physical and sexual assault and battery and/or rape. Cruise lines, including the NCL must report complaints of sexual assault and rape to the FBI and the Department of Transportation. *See* 46 U.S.C. §3507(g)(1)(A); 46 U.S.C. §3507(k)(1); 46 U.S.C. §3507(g)(3)(A)(i),(ii). The Department of Transportation has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about crimes, including sexual assault and rape that occur onboard cruise vessels. 46 U.S.C. §3507(g)(4). These compilations are titled Cruise Line Incident Reports and maintained on the United States Department of Transportation website at https://www.transportation.gov/mission/safety/cruise-line-incident-reports.  According to the Department of Transportation, sexual assault is the most common crime reported on cruise ships. For example, in 2022, cruise lines reported 67 crimes to the Department of Transportation, 57 of which involved sexual assaults.

56.     Therefore, NCL's duty of care includes warning passengers, including Plaintiff, of the high risk to passengers of physical, sexual assault, battery, and rape aboard the subject vessel, which were known to NCL.

57.     **NCL BREACHED ITS DUTY.** NCL breached its duty to warn the Plaintiff of the dangerous condition and breached its duties to the Plaintiff by its actions and conduct. NCL through its crewmembers, failed to warn its passengers, including the Plaintiff, about the high risk to passengers of crime and injury aboard the subject vessel. NCL failed to distribute any written materials and/or memos; provide warnings on its website; make audible announcements; play video warning messages or other types of warnings to its passengers that they are at high risk of crime and injury while on their cruise line. NCL also failed to comply with applicable industry standards, statutes, and/or regulations.

58.     **PROXIMATE CAUSE.** NCL's failure to properly warn the Plaintiff of the high risk of crime and personal injury, including physical and  sexual assault and battery, proximately caused the Plaintiff's injuries. Because NCL's failed to warn the plaintiff of this danger, DOE was unaware she needed to take any special precautions while aboard the subject ship. Had NCL properly warned the Plaintiff of the dangerous condition she would never have taken the subject cruise or opened the door to this or any other crew member and would never have been sexually assaulted.

59.     **DAMAGES.** As a result of NCL's negligence, the Plaintiff, has and will suffer damages in the past and in the future which are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by

the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and non-economic damages. Economic damages include medical treatment, psychological treatment, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and non-economic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT SECURITY

60.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 29 above.

61.     This is an action against NCL for negligent security onboard the *NCL Viva,* which allowed one of NCL's crew members to sexually assault the Plaintiff.

62.     **DUTIES OWED BY THE NCL TO ITS PASSENGERS.**  NCL owes a duty of reasonable care under the circumstances to its passengers. The circumstances are that NCL operates 19 cruise ships with thousands of crewmembers and thousands of passengers. The crewmembers are for the most part young man who are working onboard the ships 12-14 hours a day for months at a time. The circumstances also that the passengers are relaxed on vacation and sometimes drinking alcohol in the presence of these crewmembers. Further, the circumstances are that the crew ship is an isolated, enclosed entity where the passengers are onboard for hours or

days at the time under the observation of these crewmembers. Further, the circumstances are that there is no independent governmental law enforcement onboard the NCL crew ships. The only security provided by NCL are provided by NCL employees.

63.     Circumstances include also that passengers onboard the NCL ships are not and were not aware of the incidence of sexual assaults onboard NCL ships.  If the Plaintiff herein had been aware of the incidence of sexual assault and battery on these ships, the Plaintiff would not have purchased the subject ticket or gone on this cruise.

64.     On the other hand, cruise lines, including NCL knew that there had been numerous incidents over the years of crewmembers on cruise ships committing physically and sexually assaulting, battery and rape of its passengers and specially female passengers. *See*, *K.T. v. Royal Caribbean Cruise Line*, 931 F.3d 1041, 1049. Further, the circumstances are that "sexual assaults and other violent crimes on cruise ships are a serious problem." NCL knew of this problem years before this incident and years before 2011 when the reports made by the cruise lines cited were cited in the Eleventh Circuit Court of Appeals opinion in *Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 (11th Cir. 2011)* and cited again in 2019 in *K.T. v. Royal Caribbean Cruises, Ltd.,* 931 F.3d 1041, 1049 (2019).

65.     Further evidence that NCL had notice of problems with crewmembers assaulting passengers is the fact that the electronic sub master keys provided to room stewards do not allow access to rooms to which the room stewards are not assigned.  This measure should have restricted crewmembers from the common passenger areas such as hallways.

66.     Further evidence that NCL had notice of the serious problem with crew members assaulting passengers is that NCL like other major cruise line have been required to keep records of all complaints about certain crimes, which include physical and sexual assault and battery and/or

rape. Cruise lines, including the NCL must report complaints of sexual assault and rape to the FBI and the Department of Transportation. *See* 46 U.S.C. §3507(g)(1)(A); 46 U.S.C. §3507(k)(1); 46 U.S.C. §3507(g)(3)(A)(i),(ii). The Department of Transportation has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about crimes, including sexual assault and rape that occur onboard cruise vessels. 46 U.S.C. §3507(g)(4). These compilations are titled Cruise Line Incident Reports and maintained on the United States Department of Transportation website at https://www.transportation.gov/mission/safety/cruise-line-incident-reports.  According to the Department of Transportation, sexual assault is the most common crime reported on cruise ships. For example, in 2022, cruise lines reported 67 crimes to the Department of Transportation, 57 of which involved sexual assaults.

67.     Despite these circumstances, NCL continues to make representations on its website to the public about the safety of its ships in order to induce the public to buy cruise tickets. NCL advertises on its website that there's "More to see. More to Do. More to Enjoy. There is More to a vacation."[10] and it has "zero tolerance for crime onboard its vessels."[11]  The cruise line markets family cruises to families with minor children and teenagers. Further, NCL promotes solo cruising providing several stateroom options and states "[t]he best experiences last a lifetime – solo travel is one of them. The ability to explore, take chances to meet new people and do what you want when you want.[12] *NCL Viva* advertises and offers offshore excursions for guests to indulge in the full cruise ship experience and explore destinations. NCL in its literature and advertisements represents directly or indirectly that it provides a safe, secure and fun experience onboard its ships. In order to accomplish this marketing, the cruise line advertises and represents that its ships are safe and secure for passengers.

---

[10] *See* https://www.ncl.com/why-cruise-norwegian
[11] *See*  https://www.ncl.com/sites/default/flies/Security_Guide_040517_2
[12] *See* https://www.ncl.com/cruise-deals/solo-cruising

68.     NCL represents to the public on its website that the public areas are monitored by cameras, and highly trained Ship Security Operators continuously patrol the ship and are on emergency call 24/7.[13] Further, NCL represents to the public that NCL has a strict policy prohibiting dating between crew members and passengers.[14] "It will result in termination/dismissal. We also have a zero tolerance for harassment of any nature. Every crew member is responsible for keeping a safe, harmonious environment onboard."[15]

69.     Passengers, such as the Plaintiff, are given a false sense of security, leading them to reasonably rely on NCL to monitor surveillance cameras and provide adequate shipboard security to protect them from harm.

70.     Therefore, NCL's duty of care to protect its passengers from physical and sexual assault and battery, and rape, includes but is not limited to install a sufficient amount of security cameras on the cruise ship in the passenger areas and other public areas, which are monitored by security personnel, which could serve as a deterrent to incidents of physical sexual assault and battery or permit NCL to respond to such incidents; provide a reasonable number of experienced and trained security officers, supervisors, and guards on the cruise ship and/or otherwise provide adequate security to its passengers; promulgate and enforce trainings and reasonable rules and regulations regarding preventing sexual harassment, physical sexual assault and battery from occurring and implement security protocols to prevent its employees from accessing areas of the ship where they had no assigned duties, thereby creating a foreseeable risk to passenger safety

71.     **NCL BREACHED ITS DUTY.** NCL breached its duty to DOE. NCL breached its duty to provide proper security to ensure the safety of its passengers. NCL breached its duty to

---

[13] *See* https://ncl.com/fr/en/about-us/privacy-policy
[14] *See* https://www.ncl.com/about/careers/shipboard-employment/life-onboard
[15] *Id.*

protect DOE—who was assigned to a solo cabin—from dangers known only to NCL. NCL failed to install a sufficient amount of security cameras on the cruise ship in the passenger areas and other public areas, which are monitored by security personnel, which could serve as a deterrent to incidents of physical sexual assault and battery or permit NCL to respond to such incidents. Because there were not sufficient security cameras and the security cameras that the ship does have are not adequately monitored, there were no security officers watching the cameras to see crewmember going inside DOE's solo cabin. Because the security cameras were not adequately monitored the crew member was able to go into DOE's solo cabin and sexually assault her.

72.    NCL also breached its duties by failing to provide a reasonable number of experienced and trained security officers, supervisors, and guards on the cruise ship and/or otherwise provide adequate security to its passengers. Because there was not a sufficient amount of security officers on the ship, the security officers were not adequately patrolling the ship. Had there been an adequate amount of security officers patrolling the ship, a security officer would have discovered that its crew member had entered DOE's cabin and sexually assaulted her.

73.    NCL breached its duties by failing to promulgate and enforce trainings and reasonable rules and regulations regarding preventing sexual harassment, physical sexual assault and battery from occurring. Also, NCL failed to ascertain the cause of prior similar incidents so as to make measures to prevent the re-occurrence of sexual harassment and assaults and battery. NCL failed to investigate the hazards and assessed risks to passengers like the Plaintiff and take the necessary steps to eliminate or minimize the hazards and risks and/or warn passengers like Plaintiff of the dangers from the hazards and risks. NCL failed to implement the recommendations of security experts and sexual harassment experts and adequately investigate prior and subsequent incidents and injuries where crew members and passenger have been sexually harassed, assaulted

or battered on the *NCL Viva* and NCL's other vessels. NCL failed to comply with applicable industry standards, statute, and/or regulations.

74.     Additionally, NCL breached its duties by failing to implement security protocols to prevent its employees from accessing areas of  the ship where they had no assigned duties, thereby creating a foreseeable risk to passenger safety. Had NCL implemented or enforced protocols to restrict its employees from accessing unassigned passenger cabin floors, its crewmember would not have gained access to the deck where DOE's assigned solo cabin was located – a floor on which the crewmember had no work-related duties. Further, an effective security protocol would have alerted NCL that its crewmember was in a none-assigned deck area, carrying the Plaintiff's souvenir bags into the Plaintiff's cabin, returning to the Plaintiff's cabin and entering and locking the door to the Plaintiff's cabin.

75.     **PROXIMATE CAUSE.** NCL's failures put the Plaintiff in high risk of crime and personal injury, including physical sexual assault and sexual battery and proximately caused the Plaintiff's injuries. Had NCL properly implemented reasonable security protocols, the Plaintiff would never have been subjected to physical and sexual assault and sexual battery.

76.     **DAMAGES.** As a result of NCL's negligence, the Plaintiff, has and will suffer damages in the past and in the future which are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under The General Maritime Law and state law including economic and non-economic damages. Economic damages include medical treatment, psychological treatment, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and non-economic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:  *s/John H. Hickey, Esq.*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**ELIZABETH D CARLIN, ESQ**. (FBN 753521)
ecarlin@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
12150 SW 128th Court, Ste. 225
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Counsel for the Plaintiff*